## IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, OHIO
### SUMMONS

PRECIOUS LUCKIE
   Plaintiff,

                   Case No. 2012 CV 1032

vs.

                 Summons on Complaint

1957 N LAKEMAN AVENUE OPERATING COMPANY LLC
DBA BELLBROOK REHAB AND HEALTHCARE CENTER   C/O CSC LAWYERS INCORPORATING SERVICE STATUTORY   AGENT 50 W BROAD STREET SUITE 1800
COLUMBUS OH 43215
   Defendant.

To the above named defendants(s):

  You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the Plaintiff(s) named herein.

  You are required to serve upon the Plaintiff's attorney, Or upon the Plaintiff, if he has no attorney of record, a copy of your answer to the complaint within twenty-eight (28) days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on Plaintiff's Attorney.

  The name and address of the Plaintiff's Attorney is as follows:
  GRETCHEN MARIE TREHERNE
  BIESER, GREER & LANDIS, LLP  400 NATIONAL CITY CENTER   6 NORTH MAIN STREET
  DAYTON OH 45402
  Work Phone (937)-223-3277   Fax (937)-223-6339

  If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

Terri A. Mazur, Clerk
Greene County Common Pleas Court
45 N. Detroit St.
Xenia, OH 45385

*[signature]*
Deputy Clerk

Dated: October 9, 2012
7192378900100263783

### NOTICE
*Effective May 1, 2007*

***ANY** requests for **JURY DEMAND** must be accompanied with a Deposit in the amount of **$500.00**. Please include this Deposit with your Answer, Cross, and/or Third Party Complaint if you are submitting a Jury Demand, as well as any additional fees that may be required.*

**EXHIBIT A**



GREENE COUNTY, OHIO
FILED

2012 OC -9 PM 3: 17

TERRI A. MAZUR, CLERK
COMMON PLEAS COURT
GREENE COUNTY, OHIO

## IN THE COMMON PLEAS COURT OF GREENE COUNTY, OHIO
### CIVIL DIVISION

| | | |
|---|---|---|
| **PRECIOUS LUCKIE**<br>4277 Bayberry Cove Drive<br>Bellbrook, Ohio | :<br>:<br>: | CASE NO. **2012CV1032**<br>Judge **JUDGE BUCKWALTER** |
| Plaintiff, | : | |
| v. | : | |
| **HEALTHBRIDGE MANAGEMENT, LLC**<br>c/o CSC-Lawyers Incorporating Service,<br>Statutory Agent<br>50 W. Broad Street, Suite 1800<br>Columbus, Ohio 43215 | :<br>:<br>:<br>:<br>: | |
| and | : | **COMPLAINT** |
| **1957 N. LAKEMAN AVENUE**<br>**OPERATING COMPANY, LLC**<br>**d/b/a/ BELLBROOK REHAB AND**<br>**HEALTHCARE CENTER**<br>c/o CSC-Lawyers Incorporating Service,<br>Statutory Agent<br>50 W. Broad Street, Suite 1800<br>Columbus, Ohio 43215 | :<br>:<br>:<br>:<br>:<br>:<br>: | |
| Defendants. | | |

Now comes the Plaintiff Precious Luckie, by and through counsel, and hereby sets forth the following allegations against the Defendants HealthBridge Management, LLC ("HealthBridge") and 1957 N. Lakeman Avenue Operating Company, LLC d/b/a/ Bellbrook Rehab and Healthcare Center ("BRHC").

## PARTIES, JURISDICTION AND VENUE

1. Ms. Luckie is and at all times relevant hereto was a resident of Greene County, Ohio.

2. At relevant times, BHRC and HealthBridge operated a health care facility located at 1957 N. Lakeman Drive in Bellbrook Ohio, where Ms. Luckie was employed.

3. HealthBridge is a New Jersey corporation with business operations in Bellbrook, Ohio.

4. BHRC is a limited liability company with its principal place of business located in Bellbrook, Ohio.

5. HealthBridge is a national health care management company which manages operations at BHRC, a skilled nursing facility.

6. HealthBridge is an employer, as that term is defined in Ohio Revised Code (O.R.C.) § 4112.02.

7. At all times relevant to the allegation in this Complaint, the events in question occurred in Greene County, Ohio. Thus, jurisdiction and venue are proper for this court.

## FACTUAL BACKGROUND

8. HealthBridge hired Ms. Luckie in January 2011.

9. Ms. Luckie began working as Licensed Practical Nurse at BRHC on January 11, 2011.

10. In the Summer of 2011, Ms. Luckie expressed concerns to the human resources department at HealthBridge that BRHC was understaffed and that understaffing was a potential danger to the safety of BRHC's patients. In response, HealthBridge did nothing to alleviate Ms. Luckie's concerns.

11. In December 2011 a patient at BRHC died, causing great concern to Ms. Luckie about whether the patient's needs were properly met by HealthBridge and BRHC.

12. In March 2012 Ms. Luckie informed her supervisor, Joseph Licato, of concerns she had about staffing issues and patient safety.

13. Mr. Licato did not adequately respond to Ms. Luckie's concerns.

14. Ms. Luckie then called a telephone number posted by HealthBridge (1-800 We-CARE) to report her concerns. Ms. Luckie understood that her identity as the reporter was to be kept confidential

15. As a result of Ms. Luckie's report, HealthBridge management sent an investigator to investigate Ms. Luckie's concerns in March and April 2012.

16. The investigator met individually with the employees who worked at the BRHC facility, including Ms. Luckie.

17. Mr. Luckie shared her concerns about staffing and patient safety with the investigator. Ms Luckie also reported to the investigator an incident which she believed constituted billing fraud, particularly with respect to Medicare and Medcaid.

18. Immediately after Ms. Luckie's meeting with the investigator, Mr. Licato asked Ms. Luckie what her meeting with the investigator was about, Ms. Luckie replied that the meeting was confidential.

19. The very next day, on Thursday, April 5, 2012, Ms. Luckie was called into a meeting with Mr. Licato, the investigator, and the Director of Nursing at BRHC. Mr. Licato falsely accused Ms. Luckie of failing to administer medication to a patient the night before.

20. Mr. Licato requested that Ms. Luckie sign a written warning regarding the alleged incident, which she refused to do, since she had not done anything wrong.

21. On Friday, April 6, 2012, Ms. Luckie was scheduled to be off work. Mr. Licato called her and falsely accused her of calling BRHC to inquire as to whether Mr. Licato had been

fired. Mr. Licato Ms. Licato informed Ms. Luckie that she was suspended and that she was prohibited from speaking to anyone at BRHC pending investigation.

22. On Tuesday, April 10, 2012, Mr. Licato called Ms. Luckie to inform her that her employment was terminated.

23. Throughout her employment at BRHC and HealthBridge, Mr. Licato had demonstrated racial animus toward Ms. Luckie, who is African-American. Mr. Liacto referred to the hall in which Ms. Luckie worked as the "ghetto" and referred to other predominantly black employees by derogatory terms.

24. At all times relevant hereto, Mr. Licato was acting within the course and scope of his employment at HealthBridge and BRHC. The Defendants are vicariously liable for Mr. Licato's acts.

## FIRST CLAIM FOR RELIEF
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

25. Ms. Luckie reasserts and realleges all of the preceding allegations as if fully restated herein.

26. At all times relevant hereto, HealthBridge was an "employer" as that term is defined within Chapter 4112 of the Ohio revised Code and Ms. Luckie was an "employee" as that term is defined within said chapter.

27. In the course of said employment and upon becoming concerned about patient safety issues, Ms. Luckie notified HealthBridge about her concerns on several different occasions.

28. In or about March 2012, Ms. Luckie a representative of HealthBridge, which resulted in an investigation of her concerns, including her concerns that HealthBridge was in violation of O.R.C. § 3721.13, the Nursing Home Resident Bill Rights, her concerns that

4

HealthBridge may haven been engaged in Medicaid and Medicare fraud, and her concerns that HealthBridge may be in violation of other state and federal guidelines and statutes, in addition to its own stated guidelines.

29. Ms. Luckie informed an investigator of her concerns in an effort to stop violative practices and to ensure patient safety.

30. Instead of addressing Ms. Luckie's concerns, HealthBridge terminated Ms. Luckie's employment.

31. The Defendants did not have a legitimate business justification for their actions against Ms. Luckie.

32. The Defendants' actions are in violation of public policy.

33. The Defendants' actions and conduct collectively set forth above in the preceding paragraphs herein violate the public policy of the State of Ohio as set forth at O.R.C. § 4112.01, et seq.

34. As a direct and proximate cause of Defendants' actions and conduct, Ms. Luckie has been damaged, including suffering from severe emotional and psychological distress, embarrassment, humiliation, anxiety, fear, lost wages, and other economic damages.

35. As a direct and proximate result of the Defendants' misconduct, Ms. Luckie is entitled to recover amounts as yet unknown but to be determined at trial, constituting back pay, front pay, compensatory damages, punitive damages, and an amount to compensate her for the costs and expenses incurred in connection with this lawsuit, including reasonable attorney fees.

## SECOND CLAIM FOR RELIEF
## WHISTLEBLOWER RETALIATION

36. Ms. Luckie reasserts and realleges all of the preceding allegations as if fully restated herein.

37. In the course of Ms. Luckie's employment, she became aware of actions and/or conduct and/or omissions by the Defendants and/or employees and agents of the Defendants which were a violation of state and/or federal statute(s) and/or regulations and/or work rules or company policies.

38. In the course of Ms. Luckie's employment, she became aware of actions by the Defendants which she reasonably believed may be in violation of O.R.C. 3721.13 and O.R.C. 2901.22(D).

39. Ms. Luckie also became aware of actions which might constitute criminal conduct under O.R.C. § 2913.40 and other state and federal statutes involving Medicaid and Medicare billing fraud.

40. The Defendants had the authority to correct such violations of law(s).

41. Ms. Luckie reasonably believed that the actions, conduct, and/or omissions of the Defendants and/or its employees and agents were either a criminal offense that is likely to cause imminent risk of physical harm to person(s) and or a hazard to public health or safety.

42. Ms. Luckie notified her supervisor and other responsible company officials of the violations.

43. Ms. Luckie was disciplined and/or otherwise discriminated against and discharged by the Defendants in retaliation for her making the reports as set forth above.

44. The Defendants' actions violate O.R.C. § 4113.52(B).

45. As a direct and proximate cause of Defendants' actions and conduct, Ms. Luckie has been damaged, including suffering from severe emotional and psychological distress, embarrassment, humiliation, anxiety, fear, lost wages, and other economic damages.

46. As a direct and proximate result of the Defendants' misconduct, Ms. Luckie is entitled to recover amounts as yet unknown but to be determined at trial, constituting back pay, front pay, compensatory damages, punitive damages, and an amount to compensate her for the costs and expenses incurred in connection with this lawsuit, including reasonable attorney fees.

### THIRD CLAIM FOR RELIEF
### RACIAL DISCRIMINATION

47. Ms. Luckie reasserts and realleges all of the preceding allegations as if fully restated herein.

48. Ms. Luckie is a member of a protected class as an African- American.

49. Ms. Luckie was qualified for the position of Licensed Practical Nurse, and at all times performed her duties in an exemplary manner.

50. Ms. Luckie was wrongfully terminated from her position because of her race, and was terminated without just cause, effecting a denial to Ms. Luckie of the continued rights and privileges of her employment.

51. Upon information and belief. HealthBridge replaced Ms. Luckie with a Caucasian nurse not within the protected classifications.

52. The intentional discriminatory conduct by the Defendants was outrageous and malicious.

53. The Defendants' discriminatory treatment of Ms. Luckie because of her race violated O.R.C. § 4112.02, et seq.

7

54. As a direct and proximate cause of Defendants' actions and conduct, Ms. Luckie has been damaged, including suffering from severe emotional and psychological distress, embarrassment, humiliation, anxiety, fear, lost wages, and other economic damages.

55. As a direct and proximate result of the Defendants' misconduct, Ms. Luckie is entitled to recover amounts as yet unknown but to be determined at trial, constituting back pay, front pay, compensatory damages, punitive damages, and an amount to compensate her for the costs and expenses incurred in connection with this lawsuit, including reasonable attorney fees.

## FOURTH CLAIM FOR RELIEF
## RETALIATION

56. Ms. Luckie reasserts and realleges all of the preceding allegations as if fully restated herein.

57. The Defendants' termination of Ms. Luckie constitutes unlawful retaliation against Ms. Luckie for opposing unlawful practices by the Defendants.

58. The Defendants' illegal and retaliatory conduct was wanton and willful.

59. As a direct and proximate cause of Defendants' actions and conduct, Ms. Luckie has been damaged, including suffering from severe emotional and psychological distress, embarrassment, humiliation, anxiety, fear, lost wages, and other economic damages.

60. As a direct and proximate result of the Defendants' misconduct, Ms. Luckie is entitled to recover amounts as yet unknown but to be determined at trial, constituting back pay, front pay, compensatory damages, punitive damages, and an amount to compensate her for the costs and expenses incurred in connection with this lawsuit, including reasonable attorney fees.

## FIFTH CLAIM FOR RELIEF
## UNLAWFUL DISCHARGE IN VIOLATION OF DUE PROCESS

61. Ms. Luckie reasserts and realleges all of the preceding allegations as if fully restated herein.

62. The Defendants employ a process of discipline, governed by its policies, procedures, rules and responsibilities promulgated by HealthBridge.

63. HealthBridge has knowingly failed to follow and abide by its own policies, procedures, and/or rules in its termination of Ms. Luckie.

64. HealthBridge further failed to follow and abide by its own policies, procedures, and/or rules in terminating Ms. Luckie's employment without proper due process for Ms. Luckie's employment rights.

65. The Defendants' actions have deprived Ms. Luckie of due process to which she is entitled.

66. As a direct and proximate cause of Defendants' conduct in terminating Ms. Luckie's employment without due process, she has been damaged in an amount yet to be determined at trial, but in excess of $25,000.

## SIXTH CLAIM FOR RELIEF
## DEFAMATION/LIBEL/SLANDER

67. Ms. Luckie reasserts and realleges all of the preceding allegations as if fully restated herein.

68. Upon information and belief, the Defendants and/or their employees and agents made false and misleading statements, either in written or oral form, about Ms. Luckie and/or her termination, without privilege and justification to do so, to third parties.

9

69. In publicizing these false or misleading statements, the Defendants' conduct demonstrates a negligent and/or willful and wanton indifference to the harm that would be caused to Ms. Luckie and her reputation.

70. These statements have, in addition to causing harm to Ms. Luckie's reputation, exposed Ms Luckie to public hatred, contempt, ridicule, shame or disgrace.

71. As a direct and proximate cause of Defendants' illegal conduct, she has been damaged in an amount yet to be determined at trial, but in excess of $25,000.

## SEVENTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

72. Ms. Luckie reasserts and realleges all of the preceding allegations as if fully restated herein.

73. The Defendants' conduct was extreme, outrageous, willful, wanton, and utterly intolerable in a civilized community.

74. As a direct and proximate cause of the Defendants' conduct, Ms. Luckie has suffered severe emotional distress, embarrassment and humiliation.

75. As a direct and proximate cause of Defendants' illegal conduct, she has been damaged in an amount yet to be determined at trial, but in excess of $25,000, punitive damages, and an amount to compensate her for her costs and expenses incurred in connection with this lawsuit, including reasonable attorney fees.

**WHEREFORE**, the Plaintiff Precious Luckie asks that judgment be entered in her favor and against the Defendants HealthBridge Management, LLC and 1957 N. Lakeman Avenue Operating Company, LLC d/b/a/ Bellbrook Rehab and Healthcare Center, and that she be awarded damages in amount as yet unknown, but estimated to be in excess of $25, 000, constituting back pay, front pay, compensatory damages, punitive damages, reasonable attorney fees, interest, costs, and whatever additional relief this Court deems appropriate.

Respectfully submitted,

*Gretchen M. Treherne*
Gretchen M. Treherne (0074376)
BIESER, GREER & LANDIS LLP
400 PNC Center, 6 North Main Street
Dayton, Ohio  45402-1908
Telephone: (937) 223-3277
Facsimile: (937) 223-6339
E-mail: gmt@bgllaw.com
Attorney for Plaintiff, Precious Luckie

403808.1